**Edward RICHMAN, Plaintiff,**

v.

**USAIR INC., Defendant.**

**Civ. No. 95–4321 (CSF).**

United States District Court,
D. New Jersey.

April 15, 1997.

Lawrence Grossman, Charles Shaw, Grossman, Warren & Shaw, Morganville, N.J., for Plaintiff.

David N. Zeehandelaar, Stacie Asbell, Blank, Rome, Comisky & McCauley, Cherry Hill, N.J, for Defendant.

## AMENDED OPINION

CLARKSON S. FISHER, District Judge.

This case arises from the expulsion of plaintiff and his Lutino cockatoo named "Marshmellow" from a USAir flight from New Jersey to Buffalo, New York, and comes before the court on a motion for summary judgment.

On March 19, 1996, this court granted defendant's motion for summary judgment on plaintiff's negligence claim, and on November 27, 1996, on plaintiff's breach-of-warranty claims. This motion by defendant is for summary judgment oil plaintiff's breach-of-contract claim, the last remaining count of plaintiff's complaint, which might be termed "Marshmellow's last stand."

Plaintiff is quite versatile. He has been *engaged*, according to his deposition, as a salesman of bird feed and as a director of seminars. Additionally, he presents at various entertainment places a comedic act in which birds are usually involved, particularly "Marshmellow." He has owned "Marshmellow" for some fourteen years and trained the bird himself to respond to various commands, so that the creature is a valuable asset to this comedy routine.

On July 7, 1994, things came apart for plaintiff, "Marshmellow," the comedy act and the relationship between "Marshmellow" and plaintiff.

I turn to Richman's deposition for the unfolding of the story. Carrying "Marshmellow" in a kennel, an open baggage container, plaintiff boarded USAir Flight No. 2071 en route from Newark, New Jersey, to Buffalo,

New York. Plaintiff properly placed the kennel under the seat, as is required. The day was extremely hot, and apparently the interior of the cabin was even hotter, because of either some malfunction or nonuse of the cooling system. There was a thirty-minute delay at the bay, and when the aircraft finally pulled away from the gate into the tarmac area. it again was delayed for forty-five minutes. Plaintiff and his traveling companion became overheated and were perspiring profusely. Eventually, sounds from the kennel indicated that "Marshmellow" was in distress. She was no longer breathing properly and was having some type of physical problems either a fainting spell or other malaise. Plaintiff waved a magazine as a fan to create an airflow into the kennel, but seemingly to no avail, as she further showed signs of extreme discomfort.

In desperation plaintiff lifted the kennel up onto his lap, opened the box so he could get "Marshmellow's" head out and held her body and feathers. He said there was a clear indication of a malfunction in the bird's *breathing* and body temperature. Then, against all regulations, he took "Marshmellow" out of her kennel and put her on his lap with a blanket around her as a shield and proceeded to fan her. He says the blanket was a protection for other passengers, so that "Marshmellow" could not get away, but it hardly seems efficacious to use it for heat prostration in the little feathered friend.

This triggered some vigorous action on the part of the personnel on board the aircraft. A steward came down the aisle and directed plaintiff to put the bird back in the kennel and under the seat. Richman demurred and claimed that the bird was in need of air and the bird would likely die if placed back in the box. Not surprisingly, the steward said that it was not his responsibility and noted that the airline had to stick by the FAA rules. Plaintiff indicated that he would not put the bird back under the seat until air began to flow in the cabin. When the plane began to move, plaintiff did put the bird back in the box. However, the aircraft was not taking off, but returning to the gate, where it stood idle for about fifteen minutes.

Soon, the airport manager came on board the plane, escorted by two officers of the law and unceremoniously directed plaintiff off the plane. When they got outside, there were more officers of the law in riot gear, apparently summoned to quell any disturbance that plaintiff and little "Marshmellow" would cause or to be ready in case "Marshmellow" was going to put up a scrap. Some civility returned, and the plaintiff was placed on a flight the next morning to Buffalo on Continental Air. Presumably on this flight the air-conditioning unit was functioning.

Plaintiff is suing because (1) USAir delayed him in his time to reach the engagement, (2) they almost caused the death of his little friend "Marshmellow," (3) they caused "Marshmellow" to display, to this day, behavior patterns quite different from those she exhibited before, (4) "Marshmellow" will not get into boxes of a similar size to the kennel and (5) "Marshmellow's" confidence in plaintiff is totally dissolved.

The issues in this case were framed differently by plaintiff and defendant. Plaintiff contends that the issues in this case are (1) whether the conditions on this flight were a breach of contract by USAir, whether it was for a bird or a human, and (2) whether under the contract. whether for animal or human, the airline can put a living thing in mortal danger while the living thing is on the plane. Defendant contends that the issue is whether USAir breached any self-imposed obligations to Plaintiff. This court agrees with defendant since the March 19 opinion held that all other obligations are preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C.A. § 41713 (West Supp.1995). *See American Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).

In the course of Mr. Richman's deposition, defendant's attorney inquired as to whether there were "any specific promises or agreements that the airline made with regard to the bird." Plaintiff responded by stating: "Nobody said anything to me. I just took a plane like I normally take a plane with my bird and expected the normal decency like Continental. Delta or any other airline I fly with." Plaintiff additionally noted that he had had notice of the rule which

required that tile bird be kept in its kennel. This court hopes that the parties have learned that normal decency and common sense do not supersede FAA regulations.

Plaintiff attempted to defeat summary judgment with the following arguments (1) Marshmellow is not a "household bird," she is a "working bird" and is therefore exempt from the USAir Terms of Transportation; (2) Marshmellow is actually more similar to a human being than an animal and should be treated as such when on an airplane; (3) an airline cannot put a living thing in mortal danger while the living thing is on the plane, whether it is an animal or human; and (4) the airline has an implied or actual contract to protect everything that is living on the plane from harm. Unfortunately, plaintiff's arguments are without legal support.

Plaintiff's theories and speculation are interesting; however, they are not sufficient to defeat defendant's motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Although this court cannot give any relief to plaintiff and "Marshmellow," it is hoped, I'm sure by all, that whatever the future brings for them, everything will be—cool.

An appropriate order has been filed.